The next case today is Case No. 22-1061, Lupe Stratton v. Bentley University May it please the Court, Your Honor, my name is Helen Lipsitz. I represent the plaintiff, excuse me, the appellant, Lupe Stratton, in this matter. In accordance with the EEOC's motion, I have deferred five minutes of my argument time to the EEOC and I would like to reserve, with the Court's permission, two minutes for rebuttal. You may. Thank you, Your Honor. I have to remind myself of this. Could you just lean a little more to the microphone? Yes, is that better, Your Honor? Thank you. Thank you. Your Honors, what we have here today is a quintessential case of competing factual narratives that the District Court failed to recognize on summary judgment on all claims, from the retaliation to the FMLA to the discrimination claims. What we have here is two different versions of events that both the appellant and the appellee contest vigorously. And what that required the District Court to do was to deny summary judgment. And we would request that the Court reverse summary judgment on all claims, given that contested factual dispute we have present in this case. I'm going to begin first, Your Honors, with the retaliation claim. Can you just clear one thing up for me? I thought there was a dispute about what facts you were contesting, because of the local rules and whether certain things were... Am I misunderstanding? No, that was raised by the District Court and by the appellee, Your Honors. We have contested what was done in the lower court level was we disputed, in the body of the defendant's statement of material facts, we disputed those facts as well as we added an additional statement of material facts. And is the premise for all the arguments you're about to make us agreeing with you that because you did those things, there is a dispute of fact? In other words, if we don't agree with you on that threshold premise, then there's nothing to dispute the facts that the record would show. Isn't that right or is that wrong? No, Your Honor, entirely, because I think the facts that are... Some of the facts that are undisputed by both parties, I think give rise to... For example, there's no dispute that there was a PIP, a performance improvement plan, that was provided to my client after she complained of discrimination. And so if we look at that undisputed fact, even though that fact of the PIP is undisputed, I think how we interpret the PIP gives rise to the question that would preclude some judgment because if the PIP, which the District Court found is not sufficient to constitute a material adverse action, based on that finding by the District Court, the District Court concluded that there was not sufficient evidence of retaliation. There was not a material adverse action to sustain the retaliation claim. However, it is my client's position that the PIP was in fact evidence of a material adverse action. And under the Burlington Northern Standard, we believe that it qualifies as a material adverse action. And is that because of the additional hours or independent of the additional hours? I think what this Court and what many courts conclude when we look at retaliation claims, including the Supreme Court, context matters. And I think what you have to do is look in terms of what the PIP did, which included adding additional hours to the plaintiff's... And all of that is in the undisputed facts? The undisputed... I'm sorry, the added hours, yes. I think that the defendants dispute whether that in fact resulted in additional hours. And that's what I'm saying. If I look at only the undisputed facts, would I find anything in the record to show that it did result in additional hours? Could you kindly repeat the question again? Yeah. If I looked only at the undisputed facts, and I realize you're saying we shouldn't do that, but if we did look only at the undisputed facts, you say we'd find evidence of the PIP. That's correct. But would I find, from looking only at the undisputed facts, evidence that the PIP resulted in extra hours? I believe so, yes, Your Honor. Okay. Because if you look at the PIP itself, the PIP added additional responsibilities through the course of additional duties, for example, increasing and generating marketing leads. There's no dispute that what the PIP says, the PIP says. And the consequence of what the PIP did, I think, is a subject of debate, whether that was in fact a material adverse consequence. And I think that gives rise to what my client's position is, which is the district court did not conduct that analysis. The district court did not apply the material adverse standard that Burlington Northern dictates and which is the subject of dispute, I believe, and my brother counsel from the EEOC believes that there's confusion in this circuit about how that standard is applied. Counsel, your time is running short. I'd like to ask you this question. Yes, Your Honor. I understand the position that the district court applied the wrong standard here. But there's another issue you have to deal with, and the EEOC does not deal with this in its brief, and I understand that was not its concern. But on the Title VII retaliation claim, there's a causation issue which the district court addressed, and you have to establish that the supervisors who were responsible for the various acts that your client alleges that they were doing so in response to the complaints that had been made about their discriminatory conduct to the HR department, and the district court concluded that you did not generate a genuine issue of material fact with respect to that causation issue. Where did the district court go wrong in reaching that conclusion? I think the district court went wrong, Your Honor, on that issue by not recognizing the facts we have presented, which is that there's testimony by my client that she voiced complaints directly to the supervisors, that thereafter from those complaints there was an escalation of hostility by her supervisors, Mr. Gribbins and Mr. Albert, that there was increased public criticism of her work and of her conduct. In addition, there is evidence in the record that shows that Mr. Gribbins and Mr. Albert were informed of the complaints my client made to him, HR. Where is that in the record? You say they were, the district court says there is nothing in this record indicating that they were informed that she had filed these complaints against them with HR. Where in the record supports a contrary? If you look at the joint appendix, pages 310 to 314, 317 to 321, there is knowledge or testimony in the record where Mr. Gribbins testifies in his deposition that he informed, because he didn't want to surprise, he did not want to surprise his supervisors of these complaints that were being made to the Human Resource Department, so he informed Vicki Lafarge, who was his superior, as well as Gene Moore. There is this evidence, I think, beyond just the knowledge that Mr. Gribbins testifies to, but also if you look at the frequency of communications between the HR representative, Mr. Hatch, as well as Mr. Gribbins and Mr. Albert, that combined in this court has recognized the frequency of communications between the members of the employer can establish the knowledge and also I think links the causal nexus, because what we have is this knowledge is being conveyed between not only the communications between Hatch, Albert, and Gribbins, but also my client conveying her complaints to Mr. Gribbins and Mr. Albert. And then the conduct escalates. We have the increased job responsibilities. We have the PIP. We have evidence that she worked longer hours, that the PIP resulted in this additional amount of work responsibility, that she received public criticism. So if you look at the temporal proximity between when these complaints are being made and then the escalation of the conduct, I think that gives rise to the causal nexus, or at least at the very minimum establishes a question of fact as to whether, indeed, the reason the defendant took the action it did was because of knowledge of these complaints. Let me ask you quickly about the causal nexus question in relation to the FMLA claim and retaliation. The PIP was imposed about three months after she made her request pursuant to the FMLA. It seems to me that you only cite that three-month time period. We seem to have law that says pretty explicitly that that kind of temporal proximity, that's all you have on causation. That's not enough. Is that not a fair statement of our law? I think depending on how close in time the actions of the employer against the employee following the FMLA application or request is made, I think that there can be a conclusion that there is a sufficient causal nexus. I don't believe there's a First Circuit decision that addresses that. I believe I only found just a court decision issued in 2020. But I don't think the analysis is limited to just the temporal proximity. I think that in this case, when you're looking at the causal nexus, you have to look at the totality of the circumstances. Counsel, here is actually, I think I'm quoting Judge Selya. Without some corroborating evidence suggested of causation, and there is none here, a gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action. I understand that if the temporal proximity alone was all that we had, then that would perhaps render our claim fatal. But in this case, we don't have just a limitation. We just don't have the temporal proximity issue. We have the totality of the circumstances in how my client was treated following the FMLA request. Thank you. 2017-2020. Judge Selya, anything further? No. Thank you. Good morning, and may it please the Court. Stephen Winkleman for the EEOC. The District Court held that harassment is not actionable as retaliation unless it is so severe or pervasive that it materially alters the terms and conditions of employment. That holding is inconsistent with and failed to apply the Supreme Court's decision in Burlington Northern. Under the Burlington Northern standard, the relevant inquiry is not whether the employer's conduct affected the terms and conditions of employment, but whether it might dissuade a reasonable employee from making or supporting a claim of discrimination. This Court has correctly recognized that the Burlington Northern standard governs retaliation even when it comes in the form of harassment. In Augusta- Mr. Winkleman, when you say we correctly recognize that, I'm questioning whether you can retaliate against the Burlington Northern, can't you? Did you have trouble hearing that? I did, Your Honor. Okay, I heard it, but try it one more time. I can also repeat it. I'll try it one more time. There you go. As I read our precedents after Burlington Northern, they seem to be rather confused. They seem not to have been very consistent on this point. Is that correct? Your Honor, I'm having a little trouble hearing your question, but as I understand it, it's whether there is some inconsistency after Burlington Northern. In our precedents, yes. That's absolutely correct, Your Honor. Auguste Reyes was the earliest post-Burlington Northern decision addressing retaliation that came in the form of harassment and correctly reasoned that harassment can qualify as retaliation if it might dissuade a reasonable employee from engaging in protected activity. It's true that other precedents in this circuit or other cases in this circuit have applied a severe pervasive standard, but none have squarely addressed the propriety of doing so or the impact that Burlington Northern had on pre-Burlington Northern case law that applied a severe pervasive standard. Additionally, other… Do you have any guidance to give us from the perspective of your agency's view as to what is the kind of harassment that, though not severe and pervasive, is the kind of harassment that constitutes the kind of chilling conduct that satisfies the Burlington Northern test? Your Honor, I'm not sure that there's any specific types or categories of harassment that would… Because I guess the problem that… I find it helpful to have your agency's views on this, but it's a little hard to know what to do with the view because what you're saying is, which seems correct, severe and pervasive is not the standard. But what I think all courts are then grappling with is, well, a stray remark isn't enough, and then the answer, well, in context, maybe it could be. So I guess if the idea is just you make a contextual judgment each case and maybe there's nothing more to it than that, then that's fine. But is there any further guidance from your agency beyond that observation as to what is a chilling effect and what isn't? Your Honor, I think you picked up correctly on the fact that the Burlington Northern standard is context-specific, so it's not clear that you could have, per se, categories necessarily that categorically meet the standard or don't. It's going to be a context-specific inquiry. And there may be certain conduct that, under some circumstances, meet the well-might-have-dissuaded standard, and other contexts in which it does or does not meet that standard. Well, is the idea that just like any time something negative happens, that's a fact question for the jury? Is that your position? No, I don't think so. So what is supposed to guide us if it's not just a fact question every time if any negative conduct was identified? What's the dividing line? So I get severe and pervasive, that was an attempt to distinguish between, you know, the kinds of things that are really problematic or not. But you're right, in the Burlington Northern context, that's not the right question because we're not asking, is it the kind of conduct that would cause you to not be able to do your job? It's just the kind of conduct that would cause you not to file a complaint or engage in protected activity. But is there anything your agency offers as to how to understand what that test is beyond telling us it's not this but it's not everything? Again, Your Honor, the relevant inquiry is whether the conduct might dissuade a reasonable employee from engaging in protected activity. That is going to be a context-specific inquiry. But it's a legal inquiry, not a factual one. Well, I think it's going to have two components. One is, could a reasonable jury find that? That's the legal component. I'm sorry? That's the legal component. Well, the factual component is whether a reasonable jury could find that the employer actually engaged in the conduct of that. Yes. Then there will be another inquiry about whether a reasonable jury could find that the employer's conduct would or might well have dissuaded a reasonable employee from engaging in protected activity. Thank you. Any further questions? Just quickly, the Burlington Northern Standard, I mean you addressed that in the context of Title VII. We apparently have, and you're not suggesting that we should do this, but we have not applied that standard in the FMLA context in terms of retaliation. But some circuits have. Is that your understanding of the state of the law? Your Honor, we didn't address that issue in our brief, and I'm regrettably not prepared to address it today. Okay. Fair enough. Yeah. Fair enough. Did it tell you? Thank you. All set. Thanks. Thank you, Your Honors. Good morning, Your Honors, and may it please the Court. My name is Greg Manousis. I'm here for the Appellee Bentley University. With me is my colleague, Jacob Thaler. I'll jump right into the retaliation issues. Chief Judge Barron, from our perspective, I think there's a couple of issues with regard to how Burlington Northern impacts this case. As a preliminary matter, the District Court clearly cited Burlington Northern and applied the facts of this case to the standard set forth for retaliation cases under Burlington Northern. I don't think there's any dispute that the Supreme Court outlined a slightly different standard for retaliation claims than for discrimination claims and used this standard about whether a reasonable person would be dissuaded from complaining. But the Burlington Northern case continued to say there still needs to be a material, tangible, adverse employment consequence. To be clear, it no longer says that. Clearly, Burlington Northern says it doesn't have to be a tangible employment consequence like termination or demotion or a serious pay cut, other kinds of things. Counsel, there's no indication in the District Court's opinion that it applied what Judge Barron described as this sort of chilling approach to the adverse consequence. So isn't it a stretch to say that the District Court's opinion can fairly be read to apply the Burlington Northern? It may refer to the case, but it did not actually apply the standard. You can't find that anywhere. I don't think that's a stretch, Your Honor, for the following reasons. So I would acknowledge that Judge Casper didn't specifically use the reasonable person would be dissuaded. The Court did cite the other aspects of Burlington Northern in terms of requiring a tangible harm, a material adverse consequence in order to make out an adverse action. And she applied the facts of this case to find that because there was no evidence that suggested that the plaintiff here was treated adversely, at least no evidence in the record, and we would agree with Chief Judge Barron that most of the facts, virtually all the facts submitted by the plaintiff in that case were based on the improper statement of facts. Well, what about the point about the PIP? I mean, there's still a causation question which we can come to, but just it's undisputed she was subjected to a PIP, right? That's correct. And couldn't a juror infer from the PIP, and given the additional job duties in it, that that was going to be enough of a burden to have imposed, that that might chill you? If I know, if I complain about you, I'm going to be put on an improvement plan where I have to do more work, that might lead me to think twice before I complain. Fair point, Your Honor, but there is no evidence in this record that there were more duties placed on the plaintiff. Except the PIP describes additional things that had to be done, I thought. Well, the PIP simply highlights that the plaintiff was having trouble performing the functions of her position, right? There's no dispute that for the first time in 20 years, the boot camp for which she was solely responsible had to be canceled due to under-enrollment. There's no dispute that there was fewer training leads for this user experience consulting work that the department did, for which the plaintiff was solely responsible. There's no question that she was stumbling significantly in her position. And the performance improvement plan, like the First Circuit's case law about performance improvement plans, simply redirected her on how to more successfully do her job. It did not add duties. It did not add hours to her day. The plaintiff testified. So isn't there something inherently threatening about that plan? I mean, you're put on that plan because you're a problematic employee, and by their own description, that is, I think in their own depositions, the supervisors indicated that one purpose of such a plan is to provide documentation that it may be necessary to remove an employee. I mean, it's an inherently threatening step, is it not? Well, Your Honor, perhaps in some contexts it could be, but a review of this performance improvement plan together with the case law of this court, so the Botti v. Boston University case makes very clear that performance improvement plans, you know, to the extent that they simply redirect the work and rechannel the plaintiff's efforts towards success, is not a materially adverse employment action. Undoubtedly, an employee wouldn't be happy to be placed on a performance improvement plan. Is Botti a retaliation case? Isn't the point that it doesn't have to be a materially adverse employment action under the Bill of the Northern Standards? It just has to be some kind of tangible consequence. I'm sorry, I didn't quite get that. I can repeat it, but Judge Selle, you try one more time. Isn't the point that it doesn't have to be a materially adverse employment action under the Burlington Northern Standards? Under that standard, it really has to be some sort of tangible consequence. It's a good question, Judge Selle, and I think this goes to our broader point about the import of Burlington Northern here. There's no question that Burlington Northern says it doesn't need to be a tangible employment action with respect to some specific term or condition of employment, like demotion, like termination, like a pay cut. There's no question about that. The court says it should be broader than that because of the protections of retaliation. However, the court still says it needs to be a material, tangible harm. It has to be a significant harm. And so what we would submit to the court is that some of this is semantics, right? The court uses the terms material. It uses the terms tangible. But a PIP is tangible. Well, it's not tangible harm to the plaintiff. That's the issue. I'm sorry? Isn't that the issue? First, there's a question, is it tangible? Well, it seems like it's pretty formalized. If you don't do certain things, you've got a big problem. So in that sense, it's tangible. Then you say it's not harmful because why? Well, because it didn't change any of the aspects of her job. It didn't punish her. It didn't take any tangible adverse action. And it simply redirected her on how to succeed on her job. For managers, the record was like that. In Botti, the case you cited, was that a retaliation case? Yes. Yeah. And there are multiple other cases that we've cited in our brief. She became ineligible for transfers within the organization. That's clearly set forth. Well, not quite, Judge Lopez. There's no question there was a policy, and Judge Casper spoke about that, that Bentley had a policy that suggested that. However, it appears that that policy isn't and wasn't applied. The undisputed record here shows that the plaintiff applied for another position and actually got to be a finalist for that role and voluntarily withdrew from that position. While she was on the PIP? Yes, while she was on the PIP. So as a practical matter, it didn't impair her from getting another job. It does. But if the policy was in place at the time the PIP was imposed, why would we look at what then happened, whether they made an exception to it, for purposes of determining whether the imposition of the PIP was retaliatory because it would be chilling? Well, perhaps not. But I think as a practical matter, I think the court has to ultimately look at what was the effect on this plaintiff. But at the time the PIP is imposed, not at the time an exception to policies that the PIP contemplated was made. Well, there's no evidence in the record that the plaintiff was ever aware of that policy, so as to be chilled, nor was she in fact prevented from a position. Where was the policy expressed? It was an internal HR policy that indicated that if people were on a PIP, they're not eligible. It's not something which would have necessarily become evidence to the plaintiff as an employee. Is that relevant, though? I mean, because I would have thought the thing would – well, I don't know whether – you tell me, is the right question for purpose of this inquiry whether the employer intended to retaliate or whether the employee would have understood they were being retaliated against? Well, I think that – Because if I have a PIP and the secret policy is you're gone once you're on the PIP. Well, I think the former, Your Honor, and that's where sort of the other pieces of the district court's decision are germane here. You've seen the other arguments in our briefs that say even if the court were to consider the imposition of the PIP as materially adverse, and again we'd suggest that that would be inconsistent with existing case law of the First Circuit, but if the court were to consider that to be adverse for multiple other reasons, the district court's decision was proper. There was no evidence of causation. There was no evidence that her managers ever knew. And just so I'm clear, when you say that, are you relying on the undisputed facts solely or are you saying even if we looked outside of those, same answer? Really both, but I mean, you know, the proper thing would be based on the statement of undisputed facts. If the court were to consider the plaintiff's separate submission, you know, even though that's inconsistent with the rule and wasn't considered accordingly by the district court, even those facts don't cite any record testimony that would suggest otherwise. And you've even heard this morning, my sister counsel indicated that the plaintiff's best argument is that, well, you know, I never, my managers must have known about it because they talked with HR about it. Counsel, let me ask you. In part, opposing counsel said that she complained directly to her supervisors about the way in which she was being treated and that adverse treatment escalated after her direct complaints to them. Is that a, does that address the causation issue at all? I mean, because she, I don't understand opposing counsel to say that she was saying to them, you're discriminating against me because of my ethnicity, my gender. She was just complaining about the way she was treated. When she went to HR, I guess she did raise the specter of discrimination on prescribed grounds. So my question is, do those complaints directly to her, to her supervisors, do they meet the causation requirement from your point of view? I would submit no, Your Honor, because they don't, there's no evidence on the record that she complained of discrimination to her supervisors. There's no dispute that she would raise concerns with them, you're giving me too much work and this is too hard and, you know, and it's too much, the duties are too hard. She did complain about that. She never raised discrimination with them, even she hasn't testified as much. She has testified that she raised it with human resources. There's a dispute of fact about that, admittedly. What there is no evidence on the record of is that HR, you know, HR says she never complained about discrimination to us either. The HR manager's notes reflect that she never complained about discrimination. And so the HR manager never raised discrimination issues with the plaintiff's manager. So the most the plaintiff argues, as you heard this morning, is that some sort of inference ought to be drawn that they knew. There is no case law supporting that. There has to be something more, you know, I understand there are certain cases that suggest that inferences can be drawn from the totality of circumstances, but not when you're talking about something like knowledge and not in the absence of any evidence that they had such knowledge. So we would say there is a causation problem there and there's also a pretext problem. So the performance, there's no question that the performance issues, first of all, they both preceded and followed the protected activity. And the performance issues were empirical and objective. The boot camp that she was responsible for was canceled. There's no dispute about that. And that she was solely responsible for it. There's no dispute that there was a huge decline in the leads for training, consulting and training for which she was solely responsible. So, you know, the things they were writing her up for, she hasn't shown any pretext. She hasn't shown they were writing me up for things, they were putting me on a performance improvement plan for things that weren't legitimate. And so the district court properly found that there simply wasn't any evidence in the record. The other cases that you've seen that have been cited by both amicus and by the appellant talk about, you know, the Auguste case is somebody who was raped by her supervisor, sexually assaulted by her supervisor after the complaints. There are other ones that talk about 17 months of harassment that happened after it. Those cases are very different than in this case where one has, you know, searches the record in vain for any sort of truly materially adverse action, you know, in the Burlington Northern sense that occurred with respect to this plaintiff. I'd like, I'm sorry. I was just going to check with you and tell you if you had anything further. I'd like to make, if I could, in the remaining minute, one final point about this issue of whether Burlington Northern could be read to require severe, in the hostile work, retaliatory hostile work environment context, could be read to obviate the requirements of severe or pervasive harassment. And we'd suggest, Your Honor, first, there's nothing in Burlington Northern that talks about that or suggests as much. And we'd also say that any fair reading of Burlington Northern would suggest that that's not at all what the Supreme Court would have intended. You know, for 30 years, the case law of hostile work environment has suggested severe or pervasive conduct. And even though Burlington Northern may have lowered the bar some for retaliation claims, there's nothing suggesting that they were lowering the bar to not require it to be either severe or pervasive. And to your point, Chief Judge Byron, like, there has to be one, there has to be something. It does, but it seems odd that it would be the same thing that is required to show it's actionable that I can't work here anymore. Well, no, you would look at it from the perspective of, you know, the standard of widow prison. But that seems like it seems just inherent in what Burlington Northern is saying, that it would be less than severe or pervasive just because the type of thing you're trying to protect against is not the same thing. Well, so Judge Breyer, I think, addressed this in Justice Breyer in the Burlington Northern case specifically. And he talked about, you know, somebody whose manager then declines, doesn't invite the plaintiff out to lunch, is a trivial slight and it doesn't rise to the level, not severe, not pervasive. And not harassment. Right. But if somebody, if that same manager refused or declined to invite that plaintiff to a series of weekly training lunches that impair that plaintiff's training opportunities and professional development, that might well be, could, you know, dissuade a reasonable person from complaining. And when Justice Breyer talked about that, it's essentially the severe or pervasive requirement, right? One small incident isn't enough. It has to either be severe or it has to be pervasive in order to meet the standard even under Burlington. Thank you. Thank you. Your Honor, just very briefly on that last point, I think it would be inconsistent for the court to apply a severe and pervasive standard for the retaliation claims when the Burlington Northern Standard says that it is, would the evidence show, be it sufficient enough for a reasonable juror to be, a reasonable person to be dissuaded from making a complaint to the employer given the conduct or the actions of the employer thereafter. I think that attaching the severe and pervasive requirement brings the standard higher to the level of the discrimination claims, which is specifically what the Supreme Court in Burlington Northern said was not happening and was not required. In the last minute you have, do you want to just address that causation point? If I understood it, the response to your call with Judge Lopez was that the evidence that's in the record doesn't show that there were complaints about the discrimination. In other words, complaints about the protected, the thing that would make it protected activity to file in the exchanges with the supervisors. Your Honor, may I just have a moment? So the record at 310, the joint appendix, the plaintiff talks about, or we talk about her testimony that she made complaints to Gribbins and Albert about not only the workload and the conditions that she was working in, but also she testified that it was a hostile work environment and that the conditions she was working in were essentially intolerable and she was requesting an adjustment to that work situation. I don't think that the case law requires her to use an exact word such as discrimination or even hostile work environment, and particularly in light of the reasonable inferences that can be drawn under the summary judgment standard, a reasonable juror can conclude based on that testimony that there was complaints made directly to her supervisor. Thank you. Thank you, Your Honor. That concludes argument in this case.